# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| First National Bank and Trust Company of Rochelle, Illinois, | |
| Plaintiff, | Case No. 13 C 5693 |
| v. | Judge John Robert Blakey |
| The McGraw-Hill Companies, Inc., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss [36]. For the reasons set forth below, the Court grants Defendants' motion to dismiss [36] and dismisses the First Amended Complaint in its entirety, with prejudice.

## BACKGROUND

On July 3, 2013, Plaintiff, First National Bank and Trust Company of Rochelle, Illinois ("FNBR"), filed suit in the Circuit Court of Cook County against two credit rating agencies, S&P and Moody's (the "RAs").[1] On August 9, 2013, the action was removed to this Court on diversity grounds. The First Amended Complaint ("FAC"), the operative complaint, was filed on August 12, 2013.[2]

Plaintiff alleges that the RAs issued inflated ratings on residential mortgage backed securities ("RMBS"), failed to correct those ratings as the market

---

[1] Moody's comprises Moody's Corp. and its subsidiary Moody's Investors Service, Inc. S&P comprises the McGraw-Hill Companies, Inc., its subsidiary Standard & Poor's Financial Services, LLC and its business unit Standard & Poor's Ratings Services.
[2] The FAC is substantially the same as Plaintiff's Cook County complaint [1-2], with identical causes of action.

1

deteriorated, and misrepresented their own independence and objectivity. [10] FAC at ¶ 1, 15, 24, 113-129. This led to Plaintiff's injury when the RMBS it purchased, relying on the RAs' statements, were downgraded. *Id.* ¶¶ 1, 113-129, 178, 186.

According to the FAC, the RAs are nationally recognized statistical rating organizations that assess the credit quality of, and assign credit ratings to, RMBS and other securities. *Id.* ¶ 28. The RAs' ratings are a virtual prerequisite to the sale or purchase of RMBS because, under federal regulations, the ratings directly influence the amount of capital a bank must have in reserve – *i.e.* holding higher rated RMBS requires less capital reserves than holding lower rated RMBS. *Id.* ¶ 55. As such, entities like the Plaintiff will not purchase RMBS without a rating, *Id.* ¶¶ 49, 54, 58, essentially making the process of rating an RMBS a *sine qua non* for its purchase/sale. Plaintiff explained the arrangement as follows:

> "Financial institutions that are issuers, or sponsors, of RMBS . . . pay credit rating agencies to issue ratings. They do so because they need investment grade ratings from the RAs to facilitate sales of the certificates, especially to banks . . ." *Id.* ¶ 46.
>
> "Investment grade credit ratings, thus . . . ensured some investors, such as FNBR and members of the putative class, could make a purchase . . . In short, sales of RMBS would be impractical without ratings and impossible on the scale to which they rose without ratings." *Id.* ¶ 47.

Put otherwise, AAA ratings are "essential to sell [RMBS] to community banks." *Id.* pg. 24.

Plaintiff claims that – given the centrality of the RAs to the process of buying/selling RMBS and the RAs' own representations about their independence and objectivity – it relied on the RAs' inflated ratings, misrepresentations, and

2

omissions by buying RMBS certificates rated AAA. [10] ¶¶ 15, 22. Plaintiff contends that it would not have bought those RMBS certificates without the high ratings given by the RAs. *Id.* ¶ 24. But, relying on the RAs' various representations, Plaintiff bought several tranches of RMBS between December 2007 and February 2008. *Id.* ¶ 22. Plaintiff subsequently suffered damages when the market collapsed and the RMBS ratings were downgraded. *Id.* ¶ 186. When that happened, Plaintiff was forced to write down the market value of the RMBS it purchased, pay higher FDIC and OCC fees, default on its holding company loan, and sustain increased regulatory supervision. *Id.*

Based on the foregoing factual allegations, the FAC advances four causes of action: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"); (2) violation of the Uniform Deceptive Trade Practices Act ("UDTPA"); (3) fraudulent misrepresentation and omission; and (4) negligent misrepresentation. *Id.* pp. 73-85. Plaintiff seeks remedies including declaratory judgment, actual damages, costs/fees, and injunctive relief. *Id.* pp. 85-86.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Though statute of repose arguments are affirmative defenses

plead in the defendant's answer, and the plaintiff need not pre-emptively state facts countering such arguments in its complaint, *Rice v. United States*, No. 14 CV 3278, 2014 WL 6704577, at *3 (N.D. Ill. Nov. 26, 2014), dismissal under a statute of repose is proper where it is clear from the face of the complaint that the action is untimely. *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009).

## ANALYSIS

Defendants argue that it is clear from the face of the FAC that this action is time-barred by the Illinois Securities Law ("ISL").[3] The ISL provides liability for a variety of misconduct in connection with the sale or purchase of securities. 815 ILCS 5/1 *et seq*. The purpose of the ISL "is to protect innocent persons who might be induced to invest their money in speculative enterprises over which they have little control." *Carpenter v. Exelon Enterprises Co., LLC*, 927 N.E.2d 768, 772 (Ill. App. Ct. 1st Dist. 2010). The ISL is "paternalistic and is to be liberally construed to better protect the public from deceit and fraud in the sale of securities." *Id*.

When this action was commenced in state court, the ISL contained the following statute of repose: "[n]o action shall be brought for relief under this Section or *upon or because of any of the matters for which relief is granted by this Section*," after five years from the sale of the securities at issue. 815 ILCS 5/13(D) (emphasis

---

[3]Part of Plaintiff's response is that, "by successfully arguing that claims against S&P and Moody's should be dismissed because the rating agencies were not bound by federal securities laws, Defendants are now collaterally estopped from arguing otherwise." [40] P. Resp. Br. at 8. That argument is without merit. First, Defendants do not argue that they are bound by federal securities law. Second, "collateral estoppel 'bars re-litigation of an issue already decided in a prior case.'" *In re A.W.*, 231 Ill. 2d 92, 99 (2008) (citation omitted). For collateral estoppel to apply, "the issue decided in the prior adjudication [must be] *identical* with the one presented in the suit in question." *Id*. (emphasis added). That is not the case here.

4

added).⁴ The Section 13(D) statute of repose is not limited to actions specifically brought under the ISL. Rather, Section 13(D) bars "all types of state law actions arising from the securities transaction, even under other theories of recovery such as the other state law claims asserted by the Plaintiffs." *Baron v. Chrans*, No. 05-3240, 2008 WL 2796948, at *17 (C.D. Ill. July 21, 2008) (applying the ISL's statute of repose to claims of common law fraud, negligent misrepresentation, fraudulent concealment, violation of the CFA, and breach of fiduciary duty). In other words, Plaintiff need not "expressly invoke the Securities Law in [its] complaint" in order for Section 13(D) to apply. *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007) (13(D) barred claims of breach of fiduciary duty and fraud).

In their motion to dismiss, Defendants argue that: (1) the ISL statute of repose applies to claims in the FAC; and (2) the FAC must be dismissed as time-barred under the ISL statute of repose because it was filed more than five years after the sale of the RMBS at issue. This Court agrees.⁵

## I. The ISL Statute of Repose Applies to the FAC

For the ISL statute of repose to apply, the Court must find that the FAC is an action for relief "upon or because of any of the matters for which relief is granted

---

⁴ The statute of repose formerly found in 815 ILCS 5/13(D) was removed via amendment on August 5, 2013, roughly one month after Plaintiff filed its Cook County complaint. That does not affect the Court's analysis here. "Once a claim is time-barred, it cannot be revived through subsequent legislative action." *Doe A v. Diocese of Dallas*, 234 Ill. 2d 393, 411 (2009). Plaintiff purchased the RMBS at issue no later than February 2008. [10] ¶ 22. All claims based on those transactions thus expired in February 2013. Once those claims were time-barred, subsequent legislative action could not revive them. *Id*. at 411. In this Opinion, all citations to 815 ILCS 5/13(D) or references to the "statute of repose" refer to the law in place at the time this action was filed in state court.

⁵ Because the Court rules on the statute of repose argument, it need not reach Defendants' other arguments. Nothing in this Opinion should be construed as addressing those arguments.

by" Section 13 of the ISL. 815 ILCS 5/13(D). More specifically, the FAC must allege facts showing a violation of the ISL, and the ISL must provide relief for that violation. *See* 815 ILCS 5/13(G). The FAC meets both of those requirements.

### a. The FAC Alleges Violations of the ISL

The FAC alleges misconduct that is in violation of the ISL sections on fraud or deceit in connection with the sale or purchase of securities. 815 ILCS 5/12(F) and 5/12(I). Section 12(F) prohibits "engag[ing] in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof." Section 12(I) prohibits "employ[ing] any device, scheme or artifice to defraud in connection with the sale or purchase of any security, **directly or indirectly**." 815 ILCS 5/12(I) (emphasis added). The factual allegations set out in the FAC fall within both sections.

The gravamen of the FAC is that the RAs distributed inflated ratings and misrepresented their own independence and objectivity in a way that was misleading, fraudulent and deceitful. Tellingly, Plaintiff is asserting claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count I), the Uniform Deceptive Trade Practices Act (Count II), and fraudulent misrepresentation and omission (Counts III & IV). The following allegations illustrate Plaintiff's fraud and deceit allegations:

- "The RAs engaged in unfair and deceptive acts or practices by misrepresenting directly or indirectly to FNBR and the putative class that their services had characteristics, uses or benefits that they did not have, and that their services were of a particular standard, quality

6

- or grade; all of which violate the Illinois CFA and UDTPA. The RAs' inflated ratings and misrepresentations as to the characteristics of its ratings also constitute fraud and reckless misrepresentation under Illinois common law." [10] ¶ 17.

- "Defendants are liable for the losses to FNBR and the class caused by their deceptive, misleading, reckless or intentional misrepresentations with regard to their AAA ratings on certificates purchased by FNBR and putative class members." *Id.* ¶ 18.

- "FNBR believed that the ratings on the Certificates were accurate and was deceived by the inaccurate and unsupported ratings. FNBR was further deceived by the omissions by S&P and Moody's to declare their abandonment of their policies, procedures and rigorous modeling and analysis necessary for credible and reliable ratings." *Id.* ¶ 24.

- The "AAA ratings were rendered deceptive and fraudulent because the RAs knew that investors such as FNBR relied on the independence of their ratings and the RAs themselves in considering the ratings in connection with the purchase and holding of the Certificates." *Id.* ¶ 190.

- "S&P knew that the forgoing [sic] representations were false and that the foregoing omissions were concealment of existing material facts that acted as fraud upon FNBR and the other Class members." *Id.* ¶ 205.

- "Moody's knew that the forgoing [sic] representations were false and that the forgoing [sic] omissions concealed existing material facts that acted as fraud upon FNBR and the other Class members." *Id.* ¶ 212.

Importantly, it is evident from the FAC that all of the above alleged misconduct occurred "in connection with" the sale or purchase of securities as required by Sections 12(I) and (F). 815 ILCS 5/12(F), (I).[6]

While the Illinois courts have not directly analyzed the "in connection with" requirement of the ISL, federal courts have provided useful guidance. "[T]he Illinois Securities Law is 'substantially similar' to the federal securities laws and so Illinois

---

[6] This Court is satisfied that the FAC alleged a sufficient "connection with" the sale or purchase of securities under both 12(F) and 12(I). The Court additionally notes that the "connection" requirement is even broader under Section 12(I), because it requires that the misconduct be "in connection with the sale or purchase of any security, **directly or indirectly**." 815 ILCS 5/12(I) (emphasis added).

7

courts interpret the statute with an eye towards federal law." *Goldberg v. 401 N. Wabash Venture LLC*, 904 F. Supp. 2d 820, 849 (N.D. Ill. 2012) *aff'd in part*, 755 F.3d 456 (7th Cir. 2014). Directly relevant to this Court's analysis is the federal courts' interpretation of the "in connection with" requirement from Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934. The language in those sections mirrors the language of Section 12(F) and 12(I).

> Rule 10b-5: "It shall be unlawful for any person, directly or indirectly . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, **in connection with the purchase or sale of any security**." 17 C.F.R. § 240.10b-5 (emphasis added).

> Section 10b: "It shall be unlawful for any person, directly or indirectly . . . (b) To use or employ, **in connection with the purchase or sale of any security** registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78j(b) (emphasis added).

In interpreting those sections, the Seventh Circuit has noted that when "the Supreme Court has 'sought to give meaning to the phrase ['in connection with'] in the context of § 10(b) and Rule 10b–5, it has espoused a broad interpretation.'" *United States v. Durham*, 766 F.3d 672, 682 (7th Cir. 2014) (citation omitted). The "in connection with" requirement only requires a misrepresentation that coincided with or touched a securities transaction. *Id*.

8

Here, the allegedly fraudulent activity of the RAs clearly coincided with the securities transactions, both directly and indirectly. According to the FAC, each time an issuer wants to sell a RMBS it contacts a RA and pays for a rating. [10] ¶¶ 46, 58. Each time a bank like FNBR wants to buy a RMBS, it must purchase certificates with certain ratings. *Id.* ¶¶ 46, 58, 176. As such, each of the ratings at issue in this matter was made "in connection with" the issuer's sale of the RMBS to FNBR and other banks like it. *Id.* ¶¶ 24, 42, 46-48, 176.[7] The actions taken by the RAs in rating each RMBS were therefore a necessary and indispensable part of each sale. Without them, the sale would not have occurred. Plaintiff specifically emphasized this close connection between the rating process and the sale of RMBS when it alleged:

- "FNBR purchased the Certificates for purposes of fulfilling its statutory reserve requirements and would not have purchased the Certificates had they not been rated AAA or at least AA." *Id.* ¶ 24.
- "Financial institutions that are issuers, or sponsors, of RMBS . . . pay credit rating agencies to issue ratings. They do so because they need investment grade ratings from the RAs to facilitate sales of the certificates, especially to banks . . ." *Id.* ¶ 46.
- "Investment grade credit ratings . . . ensured [that] some investors, such as FNBR and members of the putative class, could make a purchase . . . In short, sales of RMBS would be impractical without ratings and impossible on the scale to which they rose without ratings." *Id.* ¶ 47.
- "AAA ratings . . . are essential to sell [RMBS] to community banks," *Id.* pg. 24.

---

[7] Indeed, the FAC focuses on the deceptive and false ratings the RAs gave in connection with the sale of specific tranches of RMBS, and the damages suffered by the Plaintiff when those RMBS were downgraded. It is this focus on the sale/purchase of specific RMBS that sets this matter apart from the Illinois Attorney General's separate suit against the RAs. That suit, now settled, focused generally on the RAs' misrepresentations regarding their own business practices and did not seek to connect those misdeeds to any specific sales or purchases of securities. [40-1] Ex. 1, *Ill. v. McGraw-Hill Cos.*, No. 12 CH 02535, Memo. Op. and Order (Cook Cnty. Cir. Ct. Nov. 7, 2012).

9

- "Both Moody's and S&P know that banks **must** rely on their AAA or AA ratings and that even if the banks could do their own due diligence, the banks **must still buy** certificates with the AAA or AA rating to satisfy regulatory requirements. Thus, community banks, including FNBR and the putative class members, relied, and **must** rely, on Moody's and S&P's ratings." [10] ¶ 58 (emphasis added).
- "[T]he RAs knew that investors such as FNBR relied on the independence of their ratings and the RAs themselves in considering the ratings **in connection with the purchase** and holding of the Certificates." *Id.* ¶ 190 (emphasis added).

Because issuers must obtain ratings in order to sell RMBS to banks like FNBR, and the specific tranches at issue here would not have been purchased without a rating, the allegedly improper actions of the Defendants were done "in connection with the sale or purchase of" securities such that they violate both Sections 12(F) and 12(I).[8] This is especially true with regard to Section 12(I), which only requires that the alleged misconduct be "in connection with the sale or purchase of any security, **directly or indirectly**." 815 ILCS 5/12(I) (emphasis added).

### b. The ISL Provides a Remedy for the Violations Alleged in the FAC

Having established that the FAC alleges violations of the ISL, the Court now considers the remedies provided by the ISL for those violations. The issue here is whether the ISL provides a remedy for the Plaintiff – who seeks compensatory damages, attorney fees/costs, declaratory relief and injunctive relief. [10] pp. 85-86.

---

[8] *See Genesee Cnty. Employees' Ret. Sys. v. Thornburg Mortgage Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1231 (D.N.M. 2011). In *Genesee County*, the court analyzed the application of the New Mexico Securities Act ("NMSA") to misconduct by Moody's, S&P, and Fitch Ratings. The relevant section of the NMSA, which closely tracks the language of the ISL, reads "[i]n connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly: (A). employ any device, scheme or artifice to defraud; (B). make an untrue statement of a material fact or fail to state a necessary material fact where such an omission would be misleading; or (C) engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person." N.M. Stat. Ann. § 58-13B-30 (2009). The court ultimately rejected the Ratings Agencies Defendants' argument that the NMSA did not authorize the imposition of liability against them. *Genesee County*, 825 F. Supp. 2d at 1232.

Section 13 of the ISL sets forth the available private and other civil remedies under the ISL. 815 ILCS 5/13. Per Section 13(G), "[w]henever any person[9] has engaged or is about to engage in any act or practice constituting a violation of this Act, any party in interest may bring an action . . . to enjoin that person from continuing or doing any act in violation of or to enforce compliance with this Act." 815 ILCS 5/13(G). Section 13(G) provides solely for prospective relief. *Guy v. Duff & Phelps, Inc.,* 628 F. Supp. 252 263 (N.D. Ill. 1985).

Courts consistently have found that actions such as the Plaintiff's, and even actions seeking relief that is less prospective – or not prospective at all – fall within Section 13(G). Two cases are particularly illustrative. In *Grumhaus v. Comerica Sec., Inc.*, No. 99 C 1776, 2003 WL 21504185 (N.D. Ill. June 30, 2003), the plaintiff brought an action for negligence, breach of fiduciary duty, and breach of contract. The complaint alleged that the defendants acted in concert with the plaintiffs' father to create investment accounts in the plaintiffs' names and then sell their shares of certain stock to cover their father's debts. *Id.* at *1. Plaintiffs sought compensatory damages (the proceeds of the unauthorized stock sales) and "such other and further relief as may be just and fitting under the circumstances."[10] Defendant moved for summary judgment based on the ISL's statute of limitations and the Court granted the motion, concluding that "[w]hile section 5/13(G)(1)

---

[9] Plaintiff cites Section 13(A) to argue that the ISL does not provide a remedy against ratings agencies, but is limited to issuers, underwriters, dealers etc. [52] P. Resp. Br. re PJD at 1, n1. However, Section 13(G) also offers a civil remedy, and that section allows suit against "any person." "Person" is broadly defined by the statute as "an individual, a corporation, a partnership, an association, a joint stock company, a limited liability company, a limited liability partnership, a trust or any unincorporated organization." 815 ILCS 5/2.3. This includes the Defendant RAs.

[10] Second Am. Complaint, *Grumhaus v. Comerica Sec.*, Inc., No. 99 C 1776 (N.D. Ill. June 30, 2003), ECF No. 53.

provides solely for prospective relief . . . it would allow *some* relief to the plaintiffs. The section 5/13(D) limitations period does not differentiate between cases involving prospective relief and retroactive relief, instead, barring all claims based on 'any of the matters for which relief is granted' by the ISL that are not filed" within the required time frame. *Id*. at *2 (emphasis in original).

In *Klein v. George G. Kerasotes Corp*., 500 F.3d 669 (7th Cir. 2007), a former shareholder brought suit against a closely held corporation and several of its director and trustees. *Id*. at 671. He claimed that he was forced to sell his shares in the corporation, that the valuation of his stock was misrepresented, and that the price the corporation paid for his stock was improperly discounted. *Id*. at 670. Plaintiff asserted claims for breach of fiduciary duty and common law fraud. *Id*. at 671. He sought compensatory damages, punitive damages, attorney fees/costs, and "all other relief as the Court deems just and proper."[11] Defendants filed a motion for summary judgment and the district court granted that motion, finding that plaintiff's claims were barred by the ISL statute of repose.

On appeal, the Seventh Circuit affirmed. Specifically, it concluded that plaintiff's allegations fell under the ISL's two anti-fraud provisions (Sections 12(F) and 12(I)), and then considered whether a remedy was provided by Section 13(G). The Court cited *Grumhaus* for the proposition that "[w]hile section 5/13(G)(1) provides solely for prospective relief . . . it would allow some relief to the plaintiffs." *Id*. at 673. Because Section 13(G) provided "some relief," the Court found that the

---

[11] Am. Complaint, *Kerasotes v. Kerasotes Corp*., 2005 WL 3280227 (C.D. Ill. Nov. 3, 2005).

law provided a remedy for the alleged violations. The plaintiff's claims were therefore barred by the ISL statute of repose.

As in *Klein* and *Grumhaus*, this Court finds that Section 13(G) provides a remedy for the Plaintiff. In both *Klein* and *Grumhaus*, the plaintiffs sought compensatory and other damages without expressly requesting injunctive relief. Each court nonetheless found that Section 13(G) provided "some relief" for the plaintiffs, and therefore held that their complaint was barred by Section 13(D). Here, the FAC specifically requests both compensatory damages *and* injunctive relief. [10] pp. 85-86. Thus, Section 13(G) – which allows injunctive relief for violations of the ISL – provides a remedy for the violations alleged in the FAC. Accordingly, the statute of repose applies.

Plaintiff's position that the statute of repose does not apply because "courts have . . . held that ratings agencies are not governed by other similar state and federal securities laws" is unavailing. [40] pg. 6. The other securities laws referenced by Plaintiff are vastly different from the ISL with regard to whom they govern, and the decisions cited by Plaintiff have no bearing here. For example, in *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Serv., LLC*, 813 F. Supp. 2d 871, 878 (S.D. Ohio 2011), the Court noted that the Ohio Securities Act extends liability to "any person that . . . offers any security for sale, or receives the profits accruing from such sale" and entities who "participated in or aided the seller in any way in making such sale." The Court found that the first definition did not apply to

13

RAs, and it did not address the applicability of the second definition to RAs. This case thus has no effect on the present matter.

With regard to the federal securities laws, the first three cases cited by Plaintiff refer to actions under Section 11 of the 1933 Securities Act. In those cases, the Court found that that the RAs were not "underwriters" and therefore the Act did not apply. *See* [40] P. Resp. Br. at 7. Those cases are likewise not relevant here.

The final case cited by Plaintiff was brought under Section 10(b) and Rule 10b–5 of the 1934 Securities Exchange Act. There, the Court found that the RAs' statements were not actionable because they were "puffery." It did not explicitly determine whether the relevant laws governed RAs generally. However, it applied the law and reached a decision without ever saying RAs were exempt, suggesting that – contrary to Plaintiff's argument – RAs can be covered by the federal securities laws. *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012). In short, the cases cited by Plaintiff are not controlling and they do not affect this Court's finding that the ISL statute of repose applies.

## II. The FAC is Time-Barred under the ISL Statute of Repose

Because the ISL statute of repose is applicable to the current matter, the Plaintiff was required to file its action within five years of the sale of the RMBS at issue. FNBR alleges that it purchased all of the relevant RMBS no later than February 2008. [10] ¶ 22. Thus, all claims based on those transactions expired in February 2013. FNBR's claims – which were filed on July 3, 2013 – are therefore time-barred and dismissed as untimely.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to dismiss [36] is GRANTED. Plaintiff's complaint is hereby dismissed in its entirety, with prejudice.

Dated: March 27, 2015

Entered:

_____
John Robert Blakey
United States District Judge